# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 21 2016, 7:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Bates
Lake County Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jose Gutierrez,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 21, 2016<br><br>Court of Appeals Case No.<br>45A05-1512-CR-2372<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Salvador Vasquez, Judge<br><br>Trial Court Cause No.<br>45G01-1311-MR-11 |

**Mathias, Judge.**

[1]     Jose Gutierrez ("Gutierrez") was convicted in Lake Superior Court of murder and Class C felony battery. On appeal, Gutierrez argues that the evidence is

insufficient to support his murder conviction and raises three evidentiary issues. Specifically, he claims:

I.   The State failed prove that Gutierrez intended to commit murder;

II.  The trial court abused its discretion when it admitted a police officer's description of what he observed in a surveillance video;

III. The trial court abused its discretion when it admitted testimony that Gutierrez was asked to take his gun outside and was frisked before he was allowed to re-enter the bar; and,

IV.  Allowing an officer to testify that during a recorded jail phone call Gutierrez instructed his sister to hide evidence that would establish that he was the shooter constituted fundamental error.

Concluding that the evidence is sufficient to prove that Gutierrez intended to commit murder and that Gutierrez has not established any prejudicial evidentiary error affecting his substantial rights, we affirm.

## Facts and Procedural History

[2] On or about November 1, 2013, Gutierrez and his friend, Mark Bartell ("Bartell") went to the Michigan Avenue Bar in Hammond, Indiana, where they drank several beers and used cocaine. Daniel Juarez ("Juarez") and Rey Sanchez-Guadarrama ("Guadarrama") were also present in the bar that night.

[3] At some point that evening, Bartell called Juarez a derogatory name because Bartell offered Juarez cocaine and Juarez refused. Cesar Olivares ("Olivares"), a bar employee, observed tension between the two groups of men, and told

Gutierrez that if he had a gun, he needed to take it outside. Gutierrez also agreed to be "patted down" before he would be allowed to reenter the bar.

[4] Gutierrez and Bartell left the bar, and Gutierrez placed a handgun in the console by the driver's side door of his Hummer. Gutierrez and Bartell then reentered the bar after they were patted down.

[5] Shortly thereafter, Gutierrez approached Juarez and removed his jacket, intending to fight with Juarez. Bartell and Carlos Ramos ("Ramos"), another bar employee, held onto Gutierrez to prevent him from fighting with Juarez. Ramos ordered Gutierrez to leave the bar immediately. As Gutierrez and Bartell were being escorted from the bar, Gutierrez demanded that Juarez be kicked out as well and claimed he would return if Juarez was allowed to remain inside. Ramos locked the door to the bar after Gutierrez and Bartell were removed.

[6] Gutierrez and Bartell left the bar in Gutierrez's vehicle and parked it around the corner in an alley. Gutierrez asked Bartell for his hooded sweatshirt and put the sweatshirt on. Gutierrez then left the vehicle with the gun that he had earlier placed in the console. Bartell saw Gutierrez walk back toward the bar.

[7] Gutierrez attempted to open the door to the bar but found that it was locked. He then fired thirteen shots from his semi-automatic handgun into the outside wall of the bar underneath a row of windows. Juarez and Guadarrama had been sitting in the area near the windows that evening. Gudarrama, who was seated next to Juarez, was struck by a bullet in his foot. Tragically, Jose

Herrera, who had been asleep at the table next to Juarez's, was shot in the head and was killed.

[8] Gutierrez returned to his vehicle, and he and Bartell fled the scene. Gutierrez told Bartell that "the dude shouldn't have disrespected him." Tr. p. 480.

[9] They proceeded to another bar in Hammond. The surveillance video taken at that bar showed Gutierrez acting like he was shooting a gun. Gutierrez also pulled the handgun from his pocket to show to other people in the bar. They then returned to Bartell's residence where Gutierrez gave the hooded sweatshirt back to Bartell and gave him the gun after instructing Bartell to hide it.

[10] On November 6, 2013, Gutierrez was charged with murder and Class C felony battery with a deadly weapon.[1] A three-day jury trial commenced on March 16, 2015. The jury found Gutierrez guilty of both charges, and the trial court ordered him to serve an aggregate sixty-five-year sentence. Gutierrez failed to file a timely notice of appeal but was later granted permission to file this belated appeal.

## Sufficient Evidence

[11] Gutierrez argues that the State failed to present sufficient evidence to prove that he had the requisite intent to commit murder.

---

[1] Gutierrez was also charged with Class A felony attempted murder and Class C felony criminal recklessness resulting in serious bodily injury, but those charged were dismissed prior to trial.

> When we review a claim challenging the sufficiency of the evidence we neither reweigh the evidence nor assess the credibility of the witnesses. Instead, we consider only the evidence and reasonable inferences drawn therefrom that support the verdict. And we will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

*Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016) (citing *Treadway v. State*, 924 N.E.2d 621, 639 (Ind. 2010)).

[12] The State was required to present evidence that Gutierrez knowingly or intentionally killed Herrera. *See* Ind. Code § 35-42-1-1. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). Our supreme court has held that "[t]he intent to kill may be inferred from the firing a weapon in a manner likely to cause death or serious bodily injury." *Garrett v. State*, 714 N.E.2d 618, 621 (Ind. 1999). Moreover, "a defendant's intent to kill one person is transferred when, by mistake or inadvertence, the defendant kills a third person; the defendant may be found guilty of the murder of the person who was killed, even though the defendant intended to kill another." *Blanche v. State*, 690 N.E.2d 709, 712 (Ind. 1998).

[13] Gutierrez argues that the State "may have proved that [he] recklessly and dangerously fired a gun into the outside wall of the bar but it failed to show that

he intentionally killed Herrera while trying to shoot Juarez." Appellant's Br. at 13. Gutierrez claims that "several shots…were sprayed along the exterior wall of the bar" that "were not focused on one spot." *Id*. at 14.

[14] The State established that Gutierrez was angry with Juarez and attempted to fight with him before he was forcibly escorted from the bar. Gutierrez demanded that Juarez be kicked out as well and claimed he would return if Juarez was allowed to remain inside. Gutierrez then retrieved his semi-automatic handgun and attempted to re-enter the bar. After he discovered that the door was locked, he fired thirteen shots at the bar.[2]

[15] The State established that Gutierrez concentrated his gunfire into the wall of the bar underneath a row of small windows, which were situated toward the top of the wall. The table Juarez had been sitting at inside the bar was close to this row of windows. Ex. Vols. I & II, State's Ex. 59, 63, 85, 88, 125; Tr. pp. 610-11. Gutierrez and Bartell then fled the scene, and Gutierrez told Bartell that "the dude shouldn't have disrespected him." Tr. p. 480.

[16] This evidence is sufficient to prove Gutierrez's intent to kill Juarez. Gutierrez fired a semi-automatic handgun thirteen times into the wall of the bar in the area of the small bar that Juarez had been sitting or standing most of the evening. Juarez was in that area of the bar when Gutierrez was forcibly

---

[2] The police recovered thirteen casings, but only eleven bullets and eleven holes were on the exterior wall of the bar. Tr. pp. 222-24.

removed from it. Gutierrez then retrieved the gun from his vehicle and attempted to re-enter the bar. The State presented substantial evidence from which a reasonable jury could conclude that Gutierrez knowingly or intentionally intended to kill Juarez. We therefore conclude that, under the doctrine of transferred intent, the evidence is sufficient to support Gutierrez's conviction for murdering Herrera.

## Evidentiary Issues

[17] The trial court has broad discretion to rule on the admissibility of evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). We review a trial court's rulings for an abuse of that discretion, and we reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id. See also VanPatten v. State*, 986 N.E.2d 255, 267 (Ind. 2013); Ind. Trial Rule 61.

[18] In determining whether error in the introduction of evidence affected the defendant's substantial rights, we must assess the probable impact of the evidence upon the jury. *Id.* When a conviction is supported by substantial evidence of guilt sufficient to satisfy this court that there is no substantial likelihood that the questioned evidence contributed to the conviction, the error is harmless. *Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004).

[19] Gutierrez challenges the following evidence that was admitted during his jury trial. First, he argues that a police officer's testimony that Gutierrez's gestures recorded on a surveillance tape after the shooting depicted Gutierrez

"demonstrating how he shot into the bar", Tr. p. 343, was speculative and inadmissible. Next, he argues that detective John Suarez should not have been allowed to comment on the recorded conversation between Gutierrez and his sister, which was also played for and translated for the jury, where the detective told the jury that Gutierrez was asking his sister to get rid of the shirt he wore the night of the offense. Tr. p. 628, Ex. Vol., State's Ex. 16. Finally, Gutierrez argues that Cesar Olivares, a bar employee, should not have been allowed to testify that another bar patron told Olivares that he thought Gutierrez had a gun. Tr. pp. 109-10.

[20] Gutierrez's defense at trial was two-fold. First, he argued that Bartell was the shooter. In the alternative, Gutierrez claimed that the State failed to prove he had the intent to commit murder, and therefore, he could only be convicted of reckless homicide.

[21] The evidence that Gutierrez challenges on appeal was introduced to prove that Gutierrez, not Bartell, was the shooter. This evidence was merely cumulative of other evidence presented at trial, including the photographic and video evidence depicting Gutierrez and Bartell inside and outside the bar. Importantly, photographs and video evidence established that Gutierrez possessed the gun. Gutierrez also argued that Bartell was angry with Juarez and had reason to shoot him. However, the State proved that Gutierrez attempted to punch Juarez and was therefore forcibly escorted from the bar. Gutierrez demanded that Juarez should be kicked out of the bar as well and that he would come back if Juarez was not sent out. Tr. p. 143.

For these reasons, we conclude that even if the challenged evidence was admitted in error, it did not affect Gutierrez's substantial rights and his convictions are supported by substantial evidence of guilt. If we refuse to consider the challenged evidence, in addition to proving Gutierrez's intent to commit murder as we discussed above, we are convinced that the State presented ample evidence to prove that Gutierrez was the shooter. Notably, on appeal, Gutierrez does not argue that the State failed to present sufficient evidence that he was the shooter.

## Conclusion

Gutierrez's murder conviction is supported by sufficient evidence, and he has not established any evidentiary error that would require reversal of his convictions and a new trial.

Affirmed.

Robb, J., and Brown, J., concur.